# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| DELBERT L. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-01050-DGK-SSA |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Delbert L. Taylor ("Plaintiff") petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Administrative Law Judge ("ALJ") found Plaintiff's allegations of disabling symptoms were not supported by the medical records, and determined Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work as a secondary school teacher.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's decision is supported by substantial evidence. The Commissioner's decision is AFFIRMED.

## Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his application on July 22, 2015, alleging a disability onset date of February 14, 2014. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on January 11, 2017, found Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for a review on November 28, 2017.

Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

Plaintiff argues the ALJ erred in a myriad of ways. Plaintiff says the ALJ erred at Step Four because (1) substantial evidence does not support the ALJ's RFC as to both Plaintiff's physical and mental limitations and (2) the ALJ failed to make specific findings regarding his past work and compare them with his RFC. Plaintiff also claims the ALJ erred at Step Five by relying on the vocational expert's ("VE") testimony that Plaintiff could perform a job as an industrial cleaner based upon the RFC, because that conflicts with the DOT description. These arguments are without merit.

## I. The ALJ's RFC is supported by substantial evidence.

An RFC is the most a claimant can do despite the combined effect of all credible limitations. *See* 20 C.F.R. § 404.1545(a)(1). The claimant has the burden to prove the RFC at Step Four of the sequential evaluation process. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). An ALJ develops the RFC based on all relevant evidence of record, including the claimant's subjective statements about his limitations, as well as medical opinion evidence. *See Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2015). An ALJ must consider the claimant's allegations to assess the claimant's RFC, and must give good reasons if he questions the claimant's allegations. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1983).

The ALJ found Plaintiff could perform medium work. R. at 11. That finding is supported by substantial evidence.

### A. The ALJ's RFC as to Plaintiff's mental impairments is supported by substantial evidence.

Here, the ALJ found Plaintiff's mental limitations were "non-severe" but still caused mild restrictions in activities of daily living, social functioning, and with regard to concentration, persistence, and pace. R. at 14. Plaintiff contends the ALJ erred in determining the severity of his mental impairments and did not appropriately incorporate those impairments into the RFC.

3

First, Plaintiff argues the ALJ should have adopted the opinion of Teresa Long, M.D., Plaintiff's treating physician, instead of relying on the opinion of Martin Isenberg, Ph.D., the state agency psychologist. An ALJ "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009). When a physician's opinion is based largely on the patient's subjective complaints rather than objective medical evidence, an ALJ is entitled to give less weight to a physician's opinion. *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012). Further, the ALJ may rely on a non-examining physician as part of the medical evidence in formulating an RFC. *See* 20 C.F.R. §§ 404.1527 (explaining the ALJ must consider a number of factors when assessing medical opinions including those of state agency consultants).

Here, Dr. Long found Plaintiff suffered from extreme mental limitations, while Dr. Isenberg found Plaintiff suffered from only mild mental limitations. R. at 15. Dr. Long's opinion is arguably internally inconsistent and largely based on Plaintiff's subjective complaints. R. at 616-617. Dr. Isenberg's opinion, on the other hand, appears to be more consistent with the remainder of the record evidence presented to the ALJ. Although these opinions unquestionably conflict, the ALJ was in the best position to resolve any such discrepancies, *see Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008), and the ALJ's resolution finds support in the record. R. at 167-168, 264-266, 372, 427, 449, 462, 471, 479, 484, 494, 496, 503, 509, 550-552, 562. For example, although the record shows Plaintiff suffered from some mild anxiety, Plaintiff still went shopping and to medical appointments, walked his dog, performed household chores, cooked meals, groomed himself, managed his finances, and exercised regularly. R. at 166, 173, 264-267, 494,

501, 551, 553. Thus, the Court cannot conclude the ALJ erred in giving great weight to Dr. Isenberg's opinion and in discounting Dr. Long's.

Plaintiff also claims that by discounting Dr. Long's opinions as to his mental limitations, the ALJ failed to fully and fairly develop the record and should have obtained a consultative examination. "The ALJ . . . may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim." *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). Here, the ALJ had sufficient available evidence to determine the merits of Plaintiff's disability claim. That evidence included medical evidence about Plaintiff's impairments, showing that his conditions improved with exercise and medication, and Plaintiff's own testimony about his mental impairments. Further, the ALJ noted that Plaintiff's daily activities provide further support for the RFC. R. at 14. The ALJ did not err by failing to obtain a consultative examination.

Lastly, Plaintiff argues that even if the ALJ did not err in determining his mental limitations, the ALJ erred by failing to incorporate the mild limitations in the Psychiatric Review Technique ("PRT") analysis from Steps Two and Three into mental limitations on his RFC at Step Four.

The Court recently rejected this same argument in *Johnson v. Berryhill*, 4:17-CV-0416-DGK-SSA, 2018 WL 2336297 at *2 (W.D. Mo. May 23, 2018), finding the argument "ignores the distinction between the PRT and the RFC." While, the "PRT is used at Steps Two and Three to determine whether a claimant's mental impairments are severe or meet a Listing," "the RFC finding is made at Step Four to determine the most the claimant can do despite her functional limitations." *Id.*; *compare* 20 C.F.R. § 404.1520a, *with* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. The Court further explained:

> The RFC "considers only functional limitations and restrictions that result from an individual's impairment(s);" it is not a listing of the underlying impairments and their related symptoms. SSR 96–8p. In fact, SSR 96–8p specifically distinguishes between PRT and RFC findings, providing that the limitations identified in the PRT "are not an RFC assessment but are used to rate the severity of mental impairment(s) at Steps Two and Three of the sequential evaluation process." Id. The PRT findings are intended not to assess mental functional limitations, but instead to assist the ALJ in determining whether a claimant has a severe or listed mental impairment.

*Johnson*, 2018 WL 2336297 at *2. Accordingly, mild limitations in daily living activities, social functioning, and with concentration, persistence, and pace do not require a corresponding RFC limitation as Plaintiff suggests.

Because here, like in *Johnson*, the ALJ found Plaintiff did not suffer from a severe mental impairment, *i.e.,* that his mental symptoms did not cause more than a minimal limitation in his ability to do basic work activities, no mental limitations on the RFC were necessary. *See, e.g., Browning v. Colvin,* No. 4:13-CV-00266-REL-SS, 2014 WL 4829534, at *37 (W.D. Mo. Sept. 29, 2014) ("Mild limitations in any of the four domains of mental functioning are non-severe (20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1)) and therefore by definition cause no work-related limitations of function (20 C.F.R §§ 404.1521(a); 416.921(a))."). The ALJ committed no error.

### B. The ALJ's RFC as to Plaintiff's physical impairments is supported by substantial evidence.

Next, Plaintiff argues the ALJ erred in relying on the opinions of Kenneth R. Smith, M.D., the state agency physician, rather than on Dr. Long's opinions as to Plaintiff's physical functional limitations. As discussed, the ALJ found Dr. Long's opinions regarding Plaintiff's numerous physical restrictions did not comport with the medical record or Plaintiff's own statements regarding his physical limitations. Conversely, the ALJ found Dr. Smith's opinion that Plaintiff could perform a range of work at the medium exertional level more closely aligned with the evidence in this case. R. at 17.

The ALJ's decision to discount Dr. Long's opinion finds support in the record. For example, medical records indicate Plaintiff had 5/5 strength in both his upper and lower extremities and displayed a normal range of motion and gait. R. at 550-555. The medical records also show Plaintiff exercised regularly on the elliptical machine and lifted weights, and that he engaged in other physical activities such as taking his dog for walks and riding a bike. R. at 267, 480, 494, 501, 541, 552. The Court, therefore, cannot find the ALJ erred in discounting this portion of Dr. Long's opinion. *See Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (holding that a treating physician's opinion "may have limited weight if it provides conclusory statements only, or is inconsistent with the record") (internal quotation marks and citation omitted).

## II. The ALJ's finding that Plaintiff could return to past relevant work is supported by substantial evidence.

Additionally, Plaintiff claims the ALJ failed to make explicit findings regarding the demands of his past work and compare them with his RFC. The vocational expert testified Plaintiff's past work as a secondary teacher was light work with a specific vocational preparation ("SVP") score of 7. R. at 175. The ALJ asked the vocational expert to assume a hypothetical person with Plaintiff's RFC. R. at 176. In response, the vocational expert testified the hypothetical individual could perform Plaintiff's past work. R. at 176. "The ALJ is permitted to rely on a vocational expert in order to determine whether a claimant can perform his past relevant work, either as he performed it or as it is performed in the national econom[y]." *Girshner v. Berryhill*, No. 4:16-CV-03451-NKL-SS, 2017 WL 2859930, at *8 (W.D. Mo. July 5, 2017). The ALJ did not err by relying on the vocational expert's testimony that the Plaintiff could perform his past work as a secondary teacher.

## III. Substantial evidence supports the finding that Plaintiff can perform other work.

Plaintiff makes two arguments that the ALJ erred at Step Five. But, in this case, the

evaluation process ends at Step Four because the ALJ appropriately found the Plaintiff could perform his past work. *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014) ("The evaluation process ends if a determination of disabled or not disabled can be made at any step"). In other words, the burden does not shift to the Commissioner to prove Plaintiff could perform other work, and the Court can affirm on that basis alone.

Nevertheless, substantial evidence supports the ALJ's findings at Step Five. Plaintiff's first argument—that the hypothetical question the ALJ posed the VE was flawed because it was based upon an incorrect RFC determination—is unavailing because it requires the Court to find the ALJ erred in formulating Plaintiff's RFC. As discussed above, the ALJ did not err in determining Plaintiff's RFC.

Plaintiff's second argument—that the ALJ improperly relied on the VE's testimony that he can perform the job of industrial cleaner because the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT") and the ALJ did not resolve the conflict—is also unpersuasive.

Although Plaintiff may not agree with the VE's opinion, the VE's testimony is substantial evidence. The ALJ asked the VE a properly phrased hypothetical question which incorporated the eventual RFC finding. R. at 176. The VE answered that Plaintiff could perform jobs such as industrial cleaner, linen room attendant, and hand packager. R. at 176. While the DOT describes the job of industrial cleaner as requiring more than occasional stooping and crouching, the VE also explained her opinion was supplemented by her work experience and her opinion was still consistent with the DOT. R. at 178. Consequently, the VE's testimony constituted substantial evidence. *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (holding that when the ALJ poses a hypothetical that accurately reflects the claimant's RFC, questions the VE about any

8

apparent inconsistencies with the relevant DOT job descriptions, and the VE testifies that her opinion is partly based upon her experience, substantial evidence supports the ALJ's decision).

Moreover, even assuming an unresolved conflict exists, the two other jobs identified by the VE—linen room attendant and hand packager—satisfy the Commissioner's burden at Step Five. The VE testified there were 28,000 jobs nationally for a linen room attendant and 52,000 jobs nationally for a hand packager. R. at 176-77. Because these jobs exists in significant numbers in the national economy, there is no reversible error. *See Welsh v. Colvin*, 765 F.3d 826, 930 (8th Cir. 2014) (finding a significant number of jobs existed when there were 36,000 nationally). Even if the job of industrial cleaner should not have been discussed, it was harmless error. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("the deficiency does not require reversal since it had no bearing on the outcome").

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   October 29, 2018              /s/ Greg Kays
                                       GREG KAYS, CHIEF JUDGE
                                       UNITED STATES DISTRICT COURT